USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/15/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-v-

KELVIN MOLINA,

                  Defendant.

15 Cr. 65-4 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

Petitioner Kelvin Molina, proceeding *pro se*, seeks a writ of error *coram nobis* to vacate this Court's February 2, 2016 Order of Restitution. For the following reasons, the petition is denied.

I. **Background**

On January 6, 2016, Molina and several co-defendants were charged by complaint with (1) conspiracy to steal mail, utter forged securities, and utter forged money orders, in violation of 18 U.S.C. § 371; (2) conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349; (3) bank fraud, in violation of 18 U.S.C. § 1344; (4) uttering forged securities, in violation of 18 U.S.C. § 513; (5) uttering forged money orders, in violation of 18 U.S.C. § 500; and (6) theft and receipt of stolen mail in violation of 18 U.S.C. § 1708. Dkt. 1. On February 5, 2015, defendants were indicted on the same charges. Dkt. 26.

On May 20, 2015, Molina pleaded guilty, pursuant to a plea agreement, to Count Five of the Indictment. *See* Dkt. 55. In the plea agreement, Molina agreed to make restitution in an amount ordered by the Court. Dkt. 174-2 ("Plea Agreement") at 2. Molina also stipulated that the loss amount as to Count Five was "more than $120,000 but less than $200,000." *Id.*

1

On November 10, 2015, the Court imposed sentence, consisting principally of 24 months' imprisonment. *See* Dkt. 119 ("Sentencing Tr."). During sentencing, the Court ordered that the Government submit a restitution order by February 1, 2016. *Id.* at 21–22. The Court added that "[t]he judgment in the case will defer any [order of] restitution to Monday, February 1." *Id.* at 22. The Court then asked the Government to "make sure that the defense has reviewed and ideally signed off on the restitution order before sending it to me." *Id.* at 43.

On November 13, 2015, the Court issued the judgment, which deferred the determination of restitution until February 1, 2016. Dkt. 112 at 5.

The Government represents that on January 29, 2016, it sought and received Molina's counsel's consent on the proposed restitution order, and attaches emails to that effect. *See* Dkt. 174-1. In an order dated February 1, 2016, the Court entered the proposed order of restitution in the amount of $93,621.43. Dkt. 144 (docketed February 2, 2016).

Molina did not file an appeal. On June 20, 2018, Molina filed the instant petition for a writ of *coram nobis*. Dkt. 172 ("Pet."). On August 1, 2018, the Government filed a response. Dkt. 173.

## II. Discussion

A writ of error *coram nobis* should issue only where "extraordinary circumstances are present." *Foont v. United States*, 93 F.3d 76, 78 (2d Cir. 1996). The writ is a "remedy of last resort, strictly limited to those cases in which errors of the most fundamental character have rendered the proceeding itself irregular and invalid." *United States v. Rutigliano*, 887 F.3d 98, 108 (2d Cir. 2018) (quotation marks, citation, and alteration omitted). To secure *coram nobis* relief, "a petitioner must show that (1) 'there are circumstances compelling such action to achieve justice,' (2) 'sound reasons exist for failure to seek appropriate earlier relief,' and (3)

2

'the petitioner continues to suffer legal consequences from his conviction that may be remedied by granting of the writ.'" *Id.* (quoting *Foont*, 93 F.3d at 79).[1]

As the Court will now explain, Molina's petition fails for two independent reasons: First, he has failed to demonstrate a fundamental error rendering the Court's restitution order invalid, and second, he has failed to show sound reasons for his delay in seeking relief.

### A. No Fundamental Error

Molina's petition identifies no fundamental error rendering the Court's restitution order invalid. Molina contends first that the Court failed to issue an "Amended Judgment in a Criminal Case," as contemplated by the original judgment entered on November 13, 2015. *See* Dkt. 112 at 5. Be that as it may, there is no dispute that the Court did enter an order of restitution on February 2, 2016, see Dkt. 144, and Molina fails to explain why the omission of an amended judgment caused him any prejudice or otherwise constituted error. Nevertheless, the Court will issue an amended judgment simultaneously with this Opinion and Order.

Second, Molina contends that the Court "never contacted" him regarding the restitution order or "assigned him new counsel to challenge or object to the restitution order," thus committing "clear error." Pet. 3–4. On the contrary, at sentencing (and in Molina's presence), the Court asked the Government to "make sure that the defense has reviewed and ideally signed off on the restitution order before sending it to me." Sentencing Tr. 43. The Government did so, and Molina's counsel approved the proposed restitution order. *See* Dkt. 174-1. Molina had the opportunity to challenge the restitution order, and forewent it.[2]

---

[1] The Second Circuit has not decided whether *coram nobis* may afford collateral relief from the restitution component of a criminal sentence. *Id.* This Court need not decide the question here because, even assuming Molina may invoke *coram nobis* to challenge the Court's restitution order, his petition fails on the merits.

[2] There is no claim of ineffective assistance of counsel here.

3

Nor is there any plausible challenge to the restitution amount itself. Molina argues that although he stipulated to a loss amount between $120,000 and $200,000, that amount reflected the summed losses of *all* of the crimes with which he was charged, rather than Count Five alone. *See* Pet. 4. Not so. In the plea agreement, Molina stipulated that "[t]he Guideline applicable to the offense charged in Count Five is U.S.S.G. § 2B1.1," and "[b]ecause the loss amount is more than $120,000 but less than $200,000, a 10-level increase is warranted pursuant to U.S.S.G. § 2B1.1(b)(2)(B)." Plea Agreement 2.[3] Further, Molina also stipulated in the Consent Order of Forfeiture that forfeiture in the amount of $150,000—an amount far greater than the ultimate restitution amount—"represent[ed] the amount of proceeds obtained as a result of the offense charged in Count Five of the Indictment." Dkt. 110 at 2. He cannot plausibly argue now that the loss amount attributable to the offense charged in Count Five is only "between about 1 and 4 thousand dollars." Pet. 4.

### B. No Sound Reason for Delay

Molina's petition fails for a second, independent reason: He offers no satisfactory explanation for his more than two-year delay in challenging the restitution order. The Court understands that the Department of Homeland Security has ordered Molina removed as having committed an aggravated felony under 8 U.S.C. § 1101(a)(43)(M)(i). *See* Pet. 4–5. But this development was contemplated in the plea agreement, in which Molina acknowledged that his "guilty plea and conviction make it very likely that his deportation from the United States is presumptively mandatory and that, at a minimum, he is at risk of being deported or suffering other adverse immigration consequences." Plea Agreement 5. Molina further affirmed that he

---

[3] This is consistent with the pre-sentence report, *contra* Pet. 4, which accurately recites the terms of the plea agreement and notes that Molina and two co-defendants were responsible for loss amounts between $120,000 and $200,000, "representing the value of the stolen checks or money orders they were involved with," Dkt. 71 at ¶¶ 11, 30.

4

"want[ed] to plead guilty regardless of any immigration consequences that may result from the guilty plea and conviction, even if those consequences include deportation from the United States." *Id.* Thus Molina has long been on notice that his conviction and sentence might result in adverse immigration consequences.

Further, the Court is unpersuaded that Molina "never even saw or knew about the restitution order until the [Department of Homeland Security] sent it to him when they opposed his stay of removal in the Third Circuit in about May of 2018." Pet. 5. As explained above, the Court *in Molina's presence* directed the Government to provide Molina with a proposed order of restitution for his approval. Sentencing Tr. 43. Thus even assuming *arguendo* that Molina's attorney consented to the proposed order without Molina's approval—an assumption for which there is no supporting evidence—Molina had ample notice that an order of restitution would be issued in his case. Fully aware both that his conviction might trigger immigration consequences and that a restitution order was pending, Molina had every incentive to review his restitution order before he faced the immediate peril of removal proceedings.

## CONCLUSION

For the foregoing reasons, the petition for a writ of error *coram nobis* is denied. The Clerk of Court is respectfully directed to terminate the motion pending at Dkt. 172.

SO ORDERED.

_Paul A. Engelmayer_
Paul A. Engelmayer
United States District Judge

Dated: August 15, 2018
New York, New York

5